**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| THE ESTATE OF BROCK C. PIGORSCH, By the Administrator ROLINDA L. MARTIN, ROLINDA L. MARTIN, individually, and BRADLEY L. PIGORSCH, individually, | |
| Plaintiffs, | No. C09-4037-MWB |
| vs. | |
| YORK COLLEGE, | |
| Defendant and Third-Party Plaintiff, | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT YORK COLLEGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| HARLAN JACOBSEN d/b/a VIDEO MANIA and EUGENE CAMILLOCCI, | |
| Third-Party Defendants. | |

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . 5
    *B. Choice Of Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *C. Choice Of Law Rules* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *D. The § 145(2) "Contacts"* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *1. The place where injury occurred* . . . . . . . . . . . . . . . . . 12

  **2.**  *The place where conduct causing the injury occurred* . . . . . 13
  **3.**  *Place of domicile, residence, incorporation, or business* . . . . 14
  **4.**  *Place where the relationship was centered* . . . . . . . . . . . . 15
  **5.**  *Summary of § 145(2) contacts* . . . . . . . . . . . . . . . . . . . . 16
 **E.** *The § 6 Factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  **1.**  *Needs of the interstate and international systems* . . . . . . . . 17
  **2.**  *Relevant policies of the forum and other interested states* . . . 18
  **3.**  *Ease of determination and application of the law* . . . . . . . . 19
  **4.**  *Other § 6(2) factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    *a.*  *Protection of justified expectations* . . . . . . . . . . . . . 20
    *b.*  *Basic underlying policies* . . . . . . . . . . . . . . . . . . . . 20
    *c.*  *Certainty, predictability and uniformity of result* . . . . 21
 **F.** *Conclusion As To Conflict Of Law* . . . . . . . . . . . . . . . . . . . . . . 21

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

This case, arising from the tragic death of a college student in a motor vehicle accident, turns the typical quest for "home court advantage" on its head: the defendant college is rooting for application of the law of the state in which the plaintiffs are residents, while the plaintiffs are rooting not for the law of their home state but for application of the law of the state where the tragic accident giving rise to their claims occurred. Under such circumstances, it comes as no surprise that the choice of law will

have a significant impact upon the nature and amount of available damages, should the plaintiffs succeed on their claims.

## I. INTRODUCTION AND BACKGROUND

### A. Factual Background

The summary judgment record reveals the following undisputed facts. This case arises out of a motor vehicle accident that occurred on January 18, 2008, in Monona County, Iowa. Brock Pigorsch ("Brock"), a student at York College, died as a result of this accident. At the time of the accident, Brock was a passenger in a van owned by York College and driven by Michael Peralta, an employee of York College. York College is a Nebraska non-profit corporation with its principal place of business in York, Nebraska.

Peralta was transporting members of the York College wrestling team, including Brock, from York, Nebraska, to a wrestling meet in Orange City, Iowa. Peralta was authorized by York College to operate the York College van. The York College wrestling coaches reserved and checked out the York College van with the York College administration for travel to the wrestling meet in Orange City, Iowa.

During the 2007-2008 wrestling season, York College scheduled five wrestling meets in Iowa, which required the wrestling team to travel to Iowa. During the 2008-2009 wrestling season, the York College wrestling team again scheduled five wrestling meets in Iowa, which required the wrestling team to travel to Iowa.

At the time of his death, Brock was a resident of Kansas. Brock's mother and father, plaintiffs Rolinda Martin ("Rolinda") and Bradley Pigorsch ("Bradley"), reside in Kansas. Brock's estate is currently being probated in the District Court of Clay County, Kansas.

Third-party defendant Harlan Jacobsen d/b/a Video Mania ("Video Mania") conducts a business distributing a magazine for sale at truck stops. Video Mania, a South Dakota business, has paper vending machines in Iowa, South Dakota, Minnesota, and Wisconsin. At the time of the accident, third-party defendant Eugene Camillocci worked delivering magazines for Video Mania. He was returning to Sioux Falls after filling paper vending machines on his vending route in Iowa and Missouri. Camillocci is a South Dakota resident who lives in Sioux Falls, South Dakota.

## B. Procedural Background

On April 29, 2009, plaintiffs, the Estate of Brock C. Pigorsch, by the Administrator, Rolinda L. Martin, Rolinda L. Martin, individually, and Bradley L. Pigorsch, individually, filed their Complaint in this case against defendant York College. In their Complaint, plaintiffs allege that York College's employee, Michael S. Peralta, was negligent in driving a van owned by York College and, as a consequence, an accident occurred which resulted in the death of Brock C. Pigorsch. Plaintiffs allege that York College is vicariously liable for Peralta's negligent actions. Plaintiffs further allege that York College was negligent in entrusting the van to Peralta's operation. On June 24, 2009, York College filed its Answer to the Complaint denying the claims against it and asserting various affirmative defenses.

On January 4, 2010, York College filed a Third-Party Complaint against Harlan Jacobsen d/b/a Video Mania and Eugene Camillocci. In its Third-Party Complaint, York College alleges Camillocci's negligent driving caused the accident which resulted in Brock's death. Specifically, York College alleges that Camillocci suddenly moved from the right north bound lane of Interstate 29 to the left north bound lane and then abruptly slowed down in front of the York College van being driven by Peralta. The fatal accident

4

then occurred when Peralta was forced to take evasive action to avoid hitting Camillocci's car. Plaintiffs also filed their First Amended Complaint on January 4, 2010. In their First Amended Complaint, plaintiffs reasserted their negligent claims against York College and adopted York College's negligent claims against Video Mania and Camillocci. On February 3, 2010, Video Mania and Camillocci filed their answers to the Third-Party Complaint and the First Amended Complaint denying the claims against them.

On June 23, 2010, York College filed its Motion For Partial Summary Judgment (docket no. 40) now before the court seeking a ruling that Kansas law applies to this case. Alternatively, York College contends that if Kansas law is not applied, the court should apply Nebraska law. Plaintiffs filed their resistance to York College's motion on July 26, 2010, asserting that the facts and circumstances of this case require application of Iowa law, not Kansas law. York College then filed a reply brief in further support of its application for Kansas law on August 5, 2010.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary

judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'"

(quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). The court will apply these standards to York College's Motion for Partial Summary Judgment.

## B.  Choice Of Law

York College's Motion for Partial Summary Judgment requires the court to resolve which state's law should apply—the law of Kansas, where Brock's parents, Rolinda and Bradley, reside and where Brock's estate is being probated; the law of Iowa, the state where the accident occurred, a state in which Video Mania conducts its magazine vending business, and where Camillocci was conducting Video Mania's business at the time of the accident; or the law of Nebraska, the state where York College is located, where Brock was attending college, and where York College allegedly was negligent in entrusting the van to Peralta's operation.[1]

The court has confronted the often knotty problem of what law applies to specific common-law and statutory claims in a diversity action a number of times. *See Johnson v. American Leather Specialties Corp.*, 578 F. Supp.2d 1154, (N.D. Iowa 2008); *John Morrell & Co. v. Halbur*, 476 F. Supp. 2d 1061, 1074-1075 (N.D. Iowa 2007); *Jones ex*

---

[1]A fourth possibility is the law of South Dakota, the state where Video Mania is based and where Camillocci resides. None of the parties, however, argue that South Dakota law should be applied in this case.

*rel. Jones v. Winnebago Indus. Inc.*, 460 F. Supp. 2d 953, 963-975 (N.D. Iowa 2006); *Jones Distrib. Co., Inc. v. White Consol. Indus., Inc.*, 943 F. Supp. 1445, 1458 (N.D. Iowa 1996); *Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F. Supp. 1400, 1402-04 (N.D. Iowa 1995); *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1251-54. (N.D. Iowa 1995). However, before applying any choice-of-law rules, this court must determine whether or not there is a "true conflict" between the laws of the nominee states, because if there is no such "true conflict," then no choice of law is required. *See Modern Equip. Co. v. Continental Western Ins. Co., Inc.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) ("If there is not a true conflict between the laws of Nebraska and Iowa on the pertinent issue, then no choice-of-law is required."); *Consul General of Republic of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir. 2003) ("Before considering any issues of conflict of laws, we must first determine whether "'there actually is a difference between the relevant laws of the different states.'"") (quoting *Phillips v. Marist Soc'y of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) (quoting in turn *Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)); *Phillips v. Marist Soc'y*, 80 F.3d 274, 276 (8th Cir. 1996) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.").

In this case, York College has asserted that several "true conflicts" exist between Kansas law and Iowa law. Specifically, York College asserts that Kansas caps non-economic damages at $250,000, pursuant to KANSAS STAT. ANN. § 60-1903, while Iowa and Nebraska do not; that Kansas, Iowa, and Nebraska each calculate death damages differently, *compare* KANSAS STAT. ANN. § 5-311 *with* IOWA CODE § 633.336 *and* NEB. REV. STAT. § 30-810. Moreover, York College points out that while Nebraska does not permit punitive damages, *see Carona de Camargo v. Schon*, 776 N.W.2d 1, 8 (Neb. 19.

8

2009), such damages are allowed under Iowa law, *see Berenger v. Frink,* 314 N.W.2d 388, 393 (Iowa 1982) (holding that punitive damages may be recovered if a person dies as a result of another's willful, wanton, or malicious actions), and allowed under Kansas law in a survival action, but not a wrongful death action. *See Smith v. Printup*, 886 P.2d 985, 998-99 (Kan. 1993) (holding that "punitive damages are not recoverable in a wrongful death action in Kansas" but noting that such damages are recoverable in a survival action ). Plaintiffs have not disputed York College's contention that the laws of the three states are in "true conflict," and the court agrees. Therefore, the court will move on to the question of what state's law should apply.

## C. *Choice Of Law Rules*

The court agrees with the parties that, in a diversity action such as this, to determine what state's law applies to the plaintiffs' claims, the court must use the choice-of-law rules of the forum state, in this case, Iowa. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (the conflict-of-laws rules to be applied by a federal court are the rules of the forum state, because "[o]therwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side"); *John T. Jones Const. Co. v. Hoot General Const. Co.*, --- F.3d---, 2010 WL 2852993, at *3 (8th Cir. July 22, 2010) ("We apply the choice-of-law rules of the forum state in a diversity action."); *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009) ("Federal courts sitting in diversity apply the choice-of-law rules of the forum state."); *Allianz Ins. Co. of Canada v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006) ("In a diversity case, a district court sitting in Minnesota applies Minnesota's choice-of-law rules."); *Larken, Inc. v. Wray*, 189 F.3d 729, 732-33 (8th Cir. 1999) ("A federal

court must apply the choice of law rules of the forum state—in this case, Iowa."). The court, therefore, turns to consideration of Iowa's conflict-of-laws rules.

In its seminal decision in *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996), the Iowa Supreme Court explained,

> Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action. We now follow the Restatement [(Second) of Conflict of Laws]'s "most significant relationship" methodology for choice of law issues. *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987); *Berghammer v. Smith*, 185 N.W.2d 226, 231 (Iowa 1971). The theory behind this approach is that rather than focusing on a single factor, "the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968).

*Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). More specifically still, the court explained that, for a tort case, such as the one now before this court,[2]

> The most significant relationship test is that which is stated as follows in the Restatement (Second) Conflict of Laws:

---

[2]This court has repeatedly recognized that the "most significant relationship" test varies depending upon whether the claim at issue sounds in contract or tort. *See, e.g., Sioux Biochem., Inc. v. Cargill, Inc.*, 410 F. Supp. 2d 785, 799 (N.D. Iowa 2005); *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 831 n.3 (N.D. Iowa 2004); *L & L Builders Co. v. Mayer Assoc. Servs., Inc.*, 46 F. Supp. 2d 875, 881 (N.D. Iowa 1999); *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 23 F. Supp. 2d 974, 1002 (N.D. Iowa 1998); *Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F. Supp. 1400, 1405 (N.D. Iowa 1995). While Iowa courts apply RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188 to contract claims, they apply RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2) to tort claims. *Dethmers*, 23 F. Supp. 2d at 1002 (contract) & 1004 (tort). In this case, where only tort claims are at issue, the "most significant relationship" test is set forth in § 145(2), as stated in the quotation from *Veasley*, above.

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. Restatement (Second) Conflict of Laws § 145 (1971).

We recognized in *Joseph L. Wilmotte & Co. v. Rosenman Brothers*, 258 N.W.2d 317, 326 (Iowa 1977), that the situation-specific sections of the Restatement, such as section 145, incorporate the provisions set forth in section 6 thereof. These principles are as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) Where there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

11

> (e) the basic policies underlying the particular
> field of law,
> (f) certainty, predictability, and uniformity of
> result, and
> (g) ease in the determination and application of
> the rule to be applied.
> Restatement (Second) Conflict of Laws § 6 (1971).

*Veasley*, 553 N.W.2d at 897-98. As § 145 states, the "contacts" listed in § 145(2) "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2). Thus, the court will determine the relative importance of the various § 145(2) "contacts," as well as whether those "contacts" weigh in favor of application of Kansas, Iowa, or Nebraska law, then consider the § 6 "factors" in light of the pertinent "contacts."

### D. The § 145(2) "Contacts"

#### 1. The place where injury occurred

The Iowa Supreme Court has recognized that, among the § 145(2) "contacts," the "place where the injury occurred"—here, Iowa—has little importance, at least where the state that is the place of injury has no other interest in the case.[3] *Cameron v. Hardisty*,

---

[3] Although RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 creates a presumption in personal injury cases that the law of the place of injury applies, § 146 is inapplicable here because the Iowa Supreme Court has *never* expressly adopted § 146. Instead, the Iowa Supreme Court has formulated the applicable test for tort cases as the "most significant relationship" test set forth in §§ 6 and 145 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. *See Veasley*, 553 N.W.2d at 897-98 (stating the "most significant relationship" test for tort cases in terms of §§ 6 and 145); *and compare In re Derailment Cases*, 416 F.3d at 794 ("Nebraska has adopted the Restatement (Second) of Conflict of Laws § 146 to determine which state's law applies to a personal injury

407 N.W.2d 595, 597 (Iowa 1987). Moreover, in *Harlan Feeders*, this court noted that rejection of the "place of injury" as a determinative factor was in keeping with the Iowa courts' rejection of the longstanding rule of *lex loci delicti*. *Harlan Feeders, Inc.*, 881 F.3d at 1409 (citing *Zeman v. Canton State Bank*, 211 N.W.2d 346, 348 (Iowa 1973)). Plaintiffs concede that this factor is not controlling, but argue that Iowa has other interests in this case. Because the court cannot determine the appropriate choice of law based solely on the "place of injury," the court must consider, on the basis of other "contacts," whether Iowa has an interest based on anything more than being the "place of injury." *See Cameron*, 407 N.W.2d at 597 (the "place where the injury occurred" has little importance, at least where the state that is the place of injury has no other interest in the case); *cf. Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1360 (8th Cir. 1994) (applying Missouri law, the court considered whether the plaintiff's place of injury bore a strong relationship to the occurrence and the parties based on other § 145(2) contacts).

### 2. *The place where conduct causing the injury occurred*

Turning to the next § 145(2) "contact," the court must determine which state is the "place where conduct causing the injury occurred." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(b). Here, the alleged negligent driving of both Camillocci and Peralta, resulting in the accident which claimed Brock's life, occurred in Iowa. York College, however, argues that even though the conduct causing the injury took place in Iowa, the fact that the accident occurred there is nothing more than a fortuitous occurrence. As a result, York College further argues the place where the conduct causing the injury occurred takes on lesser importance here. In this case, while the events giving

---

[3](...continued)
claim.").

rise to the fatal accident may well be characterized as mere happenstance, the place where the conduct causing the injury occurred was not entirely fortuitous. The conduct which allegedly caused the accident could not have occurred anywhere; it could have occurred in Nebraska, the state where Brock was attending York College and from which he traveled with the York College wrestling match, or Iowa, the state where the wrestling match was to take place. Moreover, because it is the interaction between the driving of Camillocci and Peralta which is alleged to have caused Brock's fatal injuries, and Camillocci's route took him only through South Dakota, Iowa, and Missouri, the only state where Camillocci and Peralta could interact was Iowa. Accordingly, the location of the accident was not merely fortuitous in nature. Therefore, because the place where the conduct causing the injury occurred is Iowa and the location of the accident was not entirely fortuitous in nature, this factor "assumes much more importance, and in some instances may be determinative." *See Calhoun v. Yamaha Motor Corp.*, 218 F.3d 338, 347 (3rd Cir. 2000). Therefore, the place of the wrongful act weighs substantially in favor of applying Iowa law.

### 3. *Place of domicile, residence, incorporation, or business*

The third § 145(2) "contact" is "the domicile, residence, nationality, place of incorporation, and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(c). There is clearly a division here between Kansas, as the residence of Brock's parents and where his estate is currently being probated, Nebraska, the state in which York College is incorporated and has its principal place of business, and Iowa, a state in which Video Mania conducts business. *See Baedke v. John Morrell & Co.*, 748 F. Supp. 700, 704 (N.D. Iowa 1990) ("The court does not construe this [145(2)(c)] language to be solely limited to defendant's principal place of business."). As Comment *e* to § 145 explains,

14

In the case of other torts [*i.e.*, other than reputation, financial, or privacy torts], the importance of [the § 145(2)(c)] contacts depends largely upon the extent to which they are grouped with other contacts. The fact, for example, that one of the parties is domiciled or does business in a given state will usually carry little weight of itself. On the other hand, the fact that the domicile and place of business of all parties are grouped in a single state is an important factor to be considered in determining the state of the applicable law. The state where these contacts are grouped is particularly likely to be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there. This state may also be the state of the applicable law when conduct and injury occurred in a place that is fortuitous and bears little relation to the occurrence and the parties (see § 146, Comments d-e).

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. *e*. Here, Video Mania's conducting business in Iowa does "group" with the "place of injury." *See Dorman*, 23 F.3d at 1359 (finding the plaintiff's domicile in Canada was significant when Canada was also the place of injury and the place where the plaintiff purchased and used the allegedly defective product). On the other hand, neither plaintiffs' residence nor York College's place of business groups with the place of injury. Therefore, the § 145(2)(c) "contacts" weigh in favor of Iowa.

### 4. *Place where the relationship was centered*

The final § 145(2) "contact" is "the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d). From the limited record before the court, the only "relationship" between the parties was the relationship between plaintiffs and York College in Nebraska. The RESTATEMENT suggests that it is the relationship between the plaintiff and the defendant that matters, and not relationships between or among other parties. *See* RESTATEMENT (SECOND) OF

CONFLICT OF LAWS § 145 cmt. *e* (considering the place where the relationship between the parties is centered "[w]hen there is a relationship between the plaintiff and the defendant"). Thus, the court concludes that the "place where the relationship is centered" is Nebraska.

### 5. *Summary of § 145(2) contacts*

The analysis above shows that this case involves the following § 145(2) "contacts": The "place of injury" as well as the "place where the conduct causing the injury occurred" are both Iowa, and these contacts can be grouped with Video Mania's business interests in Iowa so that its contact with Iowa is of considerably greater weight; and Nebraska is the only place where a relationship between any of the parties is centered. Thus, based on the § 145(2) "contacts," Iowa has the dominant interest of the nominee states.

### E. *The § 6 Factors*

The court's consideration of the § 145(2) "contacts" is not the end of the conflict-of-laws analysis, however, because as § 145(1) makes clear, the question is which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6," *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1), and also makes clear that the § 145(2) "contacts" are merely the "[c]ontacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue. . . ." *Id.* at § 145(2); *accord Veasley*, 553 N.W.2d at 898 ("[T]he situation-specific sections of the Restatement, such as section 145, incorporate the provisions set forth in section 6 thereof."). Therefore, the court must now consider the § 6 "principles," at least to the extent that the court finds that they are implicated here, in light of the pertinent § 145(2) "contacts."

The Comments to § 145 explain that "[t]he factors in Subsection (2) of the rule of § 6 vary somewhat in importance from field to field." *Id.*, cmt. *b*. More specifically, the

Comments explain that the § 6 factors of relatively greater importance for a tort action are "the needs of the interstate and international systems [§ 6(2)(a)], the relevant policies of the forum [§ 6(2)(b)], the relevant policies of other interested states [§ 6(2)(c)] and particularly of the state with the dominant interest in the determination of the particular issue, and the ease in the determination and application of the law to be applied [§ 6(2)(g)]." *Id.*; *cf. Veasley*, 553 N.W.2d at 898 (also discounting, in an automobile accident case, the importance of the factors in § 6(2)(d) and (f), but finding that the factor in (g) was "of little importance" in such a case, because the defendant would either be held liable or it would not, without any "esoteric or complex substantive laws . . . involved"). The court will consider these relatively more important factors in turn.

### 1.    *Needs of the interstate and international systems*

The Comments to § 6 concerning "the needs of the interstate and international systems," the factor identified in § 6(2)(a), provide little insight, because they are concerned with *what choice-of-law rules* further the needs of the interstate and international systems, rather than with *what forum's substantive law* furthers the needs of the interstate and international systems. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6, cmt. *d.* Of more help is the observation of the Iowa Supreme Court in *Veasley*, that "[r]espect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a 'substantive connection' with the issue." *Veasley*, 553 N.W.2d at 899) (quoting *Milkovich v. Saari*, 203 N.W.2d 408, 417 (Minn. 1973)). Focusing on whether or not there was such a "substantive connection," the Iowa Supreme Court concluded in *Veasley* that Iowa's owner's liability law, which was at issue in that case, "is not so abnormal that an application of Iowa law would greatly disrupt interstate order." *Id.* Similarly, here, based on consideration of the § 145(2) "contacts" above, which reveal that Iowa is the state with the "dominant" interest, Iowa has an appropriate

"substantive connection" with the tort issues (such as damages and comparative fault) involved in this case so that "[r]espect for interstate and international systems is maintained" by choosing Iowa law as the applicable law. *Id.* Moreover, Iowa's comparative fault, and damages laws are "not so abnormal that an application of Iowa law would greatly disrupt interstate order" in this case, either. *Cf. id.* Therefore, this factor supports the application of Iowa law.

### 2. *Relevant policies of the forum and other interested states*

The second and third relatively more important § 6 factors in a tort case are "the relevant policies of the forum," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(b), and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," *id.* at § 6(2)(c), respectively. *Id.* § 145, cmt. *b* (identifying these factors as ones of relatively greater importance in a tort case); *cf. Veasley*, 553 N.W.2d at 898 (also discounting, in an automobile accident case, the importance of other § 6(2) factors). The Comments to § 145 indicate that what is of particular concern with regard to the § 6(2)(c) factor is the policies of "the state with the dominant interest in the determination of the particular issue." *Id.* at § 145, cmt. *b.* Thus, these two factors should logically be considered together here, where Iowa is both the forum state and the state that this court has determined has the dominant interest in the issues in this case, based on the § 145(2) "contacts."

The difficulty facing the court with respect to these two factors is that the parties have provided scant authority and limited discussion whatsoever regarding the polices behind the general tort laws of the three nominee states, Iowa, Kansas and Nebraska. The court notes that the Iowa Court of Appeals has provided some concrete guidance when it observed that the rationale for restitution under criminal law and the rationale for tort under civil law are similar: "A wrong has been done. A person has been injured or

property damaged. The victim deserves to be fully compensated for the injury by the actor who caused it." *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct. App. 1995); *see also Hartley State Bank v. McCorkell*, 91 Iowa 660, 60 N.W. 197, 199 (1894) (noting that, where the plaintiff's action sounded in tort, rather than contract, "the purpose of the law is to fully compensate him for all that he lost by the wrongful act"). Thus, the policy goal of Iowa tort law appears to be to "fully compensate" tort victims. Such a policy goal would be thwarted by application of Kansas law, which imposes caps on damages available to tort victims. Moreover, Iowa's interest in this litigation is not founded solely on an interest in fully compensating tort victims. Iowa has a further interest in application of its law because the allegedly tortious conduct occurred in Iowa. Therefore, where the court has determined, based on the § 145(2) "contacts," that Iowa's interest is "dominant," the § 6 "factors" requiring consideration and comparison of the policies and relative interests of the nominee states also weigh in favor of application of Iowa law in this case. Accordingly, the § 6(2)(b) and (c) factors weigh in favor of application of Iowa law.

### 3. *Ease of determination and application of the law*

The final § 6(2) factor of relatively greater significance in a tort case—at least according to Comment *b* to RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145—is the § 6(2)(g) factor, "ease in the determination and application of the rule to be applied." In *Veasley*, however, the Iowa Supreme Court observed that this factor was "of little importance" in the case before it, because "[e]ither [the defendant] may be held liable or it may not," and because "[n]o esoteric or complex substantive laws are involved." *Veasley*, 553 N.W.2d at 898. Similarly, here, this court finds no significant impediment to its ability to determine and apply Iowa, Kansas or Nebraska law. Thus, this factor is "of little importance." *Id.*

#### 4. Other § 6(2) factors

Although the remaining § 6(2) factors may be of relatively lesser importance in this tort case, the court will nevertheless consider them, at least briefly. Those factors are "(d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, [and] (f) certainty, predictability, and uniformity of result." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(d)-(f).

##### a. Protection of justified expectations

In *Veasley*, the Iowa Supreme Court observed that "[t]he protection of justified expectations is, according to several modern authorities, of scant relevance in automobile cases." *Veasley*, 553 F.3d at 898. The court explained that this was so in the case before it, because "'no one plans to have an accident.'" Similarly, this factor is of "scant importance" in this tort case: No one planned to have a motor vehicle accident here. Moreover, Iowa's tort law concerning motor vehicles is not so abnormal that the parties would be surprised by its rules; and both York College and Video Mania were aware that their vehicles were going to be operated in Iowa, so that each could have reasonably foreseen that Iowa law would apply to a tort action involving an accident in Iowa involving their vehicles. Thus, nothing about this purportedly less important factor weighs against the application of Iowa law.

##### b. Basic underlying policies

For some of the same reasons, "the basic policies underlying the particular field of law," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(e), certainly do not weigh against application of Iowa law. Tort law generally is concerned with compensation of victims, whether under Iowa law, Nebraska law, or, within certain caps, under Kansas law. Again, Iowa tort law is not so abnormal that it is out of step with the policies underlying the particular field of law at issue here.

### c.     Certainty, predictability and uniformity of result

The final § 6 factor is "certainty, predictability, and uniformity of result," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(f).  This factor, however, is not necessarily a realistic concern in a case involving a "mobile" product, such as the motor vehicles here, or an automobile in *Veasley*, because "[c]onflicting laws are a result of the combination of a mobile society and America's federal system in which the states have primary control over the regulation of these matters [because the combination] will always work against uniformity."  *Veasley*, 553 N.W.2d at 898 (internal quotation marks and citations omitted).  Thus, this factor also does not weigh against the application of Iowa law.

### F.   Conclusion As To Conflict Of Law

Upon consideration of the § 145(2) "contacts" and the § 6 "factors" that make up the "most significant relationship" test for conflict-of-laws determinations under Iowa law, the court concludes that Iowa has the dominant interest in the issues presented and that application of Iowa law is in keeping with the pertinent factors.  Accordingly, the substantive legal issues in this case will be governed by Iowa law.  Therefore, York College's Motion for Partial Summary Judgment is denied.

### III.  CONCLUSION

Applying Iowa's "most significant relationship" test to determine conflict-of-laws questions, the court concludes that Iowa law is applicable to the substantive legal questions presented in this case.  Thus, defendant York College's Motion for Partial Summary Judgment, seeking a ruling that Kansas law applies instead, is denied.

**IT IS SO ORDERED.**

**DATED** this 18th day of August, 2010.

_Mark W. Bennett_

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA